THEODORE KRAUS *v.* IRENE NEWTON
(5143)

DUPONT, C. J., BORDEN and O'CONNELL, Js.

Argued December 1, 1987—decision released June 7, 1988

*Herbert Watstein,* for the appellant (plaintiff).

*F. Patrick O'Sullivan,* for the appellee (defendant).

DUPONT, C. J. The plaintiff appeals from the judgment rendered by the trial court upon the jury's verdict for the defendant. The plaintiff claims that the trial court erred (1) in refusing to mark for identification a written statement made by the defendant, (2) in its jury charge regarding the duty owed the plaintiff by the defendant, and (3) in its jury charge on contributory negligence. We find no error.

The jury could reasonably have found certain relevant facts. On the morning of January 4, 1982, the plaintiff, a meter reader employed by Northeast Utilities, went to premises owned by the defendant to read the meter. Freezing rain had begun to fall the previous evening, and persisted at the time of the plaintiff's arrival. The stairs and the handrail of the defendant's premises were covered with ice. Upon descending the stairs, the plaintiff slipped and fell, suffering injuries.

The defendant testified that she did not place sand on the stairway or take any action to ameliorate the icy condition of the stairway, despite her knowledge of the storm, her proximity to the premises which were

rented by her to others, and her knowledge that a meter reader was expected on or about the first of each month. There was also testimony that during hazardous weather conditions the plaintiff's employer gave him the discretion to discontinue his duties without threat of penalty or reprimand.

The plaintiff alleged in his complaint that his injuries were the result of the defendant's negligence in failing to remedy or warn the plaintiff of the icy condition of the stairway. The defendant raised a special defense of contributory negligence, alleging that the plaintiff failed to exercise reasonable care in light of the hazardous weather conditions.

The plaintiff's first claim of error is that the trial court erred in refusing to mark for identification a written statement of the defendant which was in the possession of the defendant's counsel. During the plaintiff's cross-examination of the defendant, the defendant stated that four years earlier she had signed a statement regarding the plaintiff's fall. The plaintiff then requested that the defendant's counsel produce a copy of the statement, and that the court mark it for identification. The defendant's counsel objected. The plaintiff had previously made two unsuccessful requests for production of the statement, one pursuant to a pretrial motion for discovery and another earlier in the course of the trial.[1] The court reiterated its earlier denial of the request for production and again ruled that the defendant did not have to produce the statement. The court also denied the plaintiff's request to mark the statement for identification.

In its memorandum of decision denying the plaintiff's motion to set aside the verdict, however, the court stated that it had erred in failing to mark the state-

---

[1] These rulings are not questioned in this appeal.

ment for identification. Consequently, the court ordered the defendant to produce the statement and, upon reviewing it, concluded that the failure to mark it for identification was harmless error. The trial court marked the statement as a court's exhibit, and attached the statement to its memorandum of decision denying the plaintiff's motion to set aside the verdict.

The plaintiff claims that the posttrial marking of an exhibit for identification was error, and argues that the failure to mark the statement during the trial prejudiced the plaintiff because it prevented him from offering it as a full exhibit. We believe, contrary to the concurring opinion, that the trial transcript demonstrates that the plaintiff did intend to offer the statement as a full exhibit. The defendant argues that the statement should not have been marked for identification but that even if it should have been, the error was harmless because the statement was inadmissible. She claims that since the statement is available for our review for a determination of whether it should have been admitted as a full exhibit, the plaintiff has not been harmed.

We recognize that a "trial court's refusal to permit documents to be marked as exhibits for identification is 'manifest error' "; *State* v. *Onofrio,* 179 Conn. 23, 34, 425 A.2d 560 (1979); and that "the trial court *must* mark as an exhibit for identification *anything* offered by counsel." (Emphasis in original.) *State* v. *Silva,* 201 Conn. 244, 253, 513 A.2d 1202 (1986). The rule articulated in *Silva* requires a trial court to mark for identification any item offered into evidence by counsel as an exhibit. The question is whether an item may be offered when the party offering it does not have possession or control of it. At the time the plaintiff attempted to have the statement marked for identification, it was not in his possession, and he had failed to obtain prior possession of it through motions for

production. The general rule as articulated in *State* v. *Silva*, supra, concerning marking of documents does not necessarily require the offering party to have actual possession of the thing to be marked for identification.

In *State* v. *Silva*, supra, the trial court did not mark for identification material which was the subject of a subpoena duces tecum which had been quashed. The action of the trial court was upheld because the Supreme Court found that the motion to quash was properly granted because of the attorney-client privilege. The court stated that if the motion were properly granted, it would be conclusively established that the evidence was not discoverable and therefore not admissible at trial but if the motion to quash were improperly granted, the reviewing court would then be precluded from considering the probable effect of the evidence had it been admitted. In *Silva*, the court did not need to "decide whether the trial court erred in refusing to mark the summary as a sealed exhibit for identification, because under the circumstances we find that it properly granted the state's motion to quash the subpoena duces tecum." Id., 253–54.

The present case, unlike *Silva*, would have required a resolution by us of whether the trial court should have marked the statement for identification had the court not later made the statement a part of the record. Unlike the factual situation in *Silva*, we would otherwise have no way of determining whether the statement would have been admissible. This case is more nearly like *Duncan* v. *McTiernan*, 151 Conn. 469, 199 A.2d 332 (1964), than *State* v. *Silva*, supra. In *Duncan*, a witness for the plaintiff had been subpoened with his files. The files contained two documents signed by the defendant which the plaintiff sought to have marked for identification. The trial court ruled that the documents were not admissible and then refused to mark them for identification. It was held that it was error

to refuse to mark them because without them, it could never be determined on appeal whether they should have been full exhibits. In the present case, the trial court had determined earlier in the trial that the statement did not have to be produced. In order to preserve a claim that an exhibit should have been admitted as a full exhibit, a party is required to have the exhibit marked for identification regardless of whether the offering party has it in his possession as long as it is reasonably apparent that the other party or a witness has it in his possession.[2] See *Carpenter* v. *Carpenter,* 188 Conn. 736, 744–45, 453 A.2d 1151 (1982). Although we follow the general rule that all exhibits offered must be marked for identification, we do not imply that the rule gives a party unbridled leave to request anything to be marked for identification. The rule has obvious and practical limitations. *Canton Motorcar Works, Inc.* v. *DiMartino,* 6 Conn. App. 447, 455–57, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986).

The trial court should have allowed the statement to be marked as an exhibit. Although it did not, and its subsequent action was unusual, the result of the action was to make the appellate record whole and allows us to decide whether the plaintiff was harmed by the court's refusal to mark it as an exhibit for identification during the trial.

The proffered exhibit states that the defendant did not know of the claim that the plaintiff had fallen on her property until one of her tenants told her of a letter received by the plaintiff's counsel. It also states that another meter reader told her that the plaintiff had fallen on property "two houses down." It gives the names of the two tenants who live at the prem-

---

[2] Ordinarily it is reasonably apparent that a party or witness has a given item in his possession because the item is the subject of a subpoena duces tecum.

ises owned by the defendant and upon which the plaintiff is alleged to have sustained injuries and indicates that the defendant lives elsewhere. The statement contains no contradictions useful for impeachment of the defendant's court testimony. Even if the statement were admissible, we conclude that the plaintiff was not harmed by the court's action.

The plaintiff also argues that the statement was never properly authenticated, and reasons that there is thus no assurance that the document acquired by the court after the trial is in fact the statement which the defendant had executed. The defendant's voluntary submission of the signed document, however, may be construed as an admission by her of its authenticity. See C. McCormick, Evidence (3d Ed.) § 219; C. Tait & J. LaPlante, Connecticut Evidence § 10.2.

The plaintiff next claims that the trial court erred in instructing the jury (1) that the defendant had no duty to remedy the icy condition of the stairway until the freezing rainstorm had stopped, or a reasonable time thereafter, and (2) that a defendant has no duty to warn a plaintiff of conditions that are open and obvious.[3]

---

[3] The trial court's charge to the jury stated in pertinent part: "Under certain circumstances a landowner can be liable to a person on his property for a dangerous accumulation of ice and snow. The rule of law is that an owner may await the end of a freezing rain or sleet storm and a reasonable time thereafter before removing ice and snow from its outside entrance, walks, platforms, and steps. Then, an owner may, without violating its duty to exercise reasonable care for the safety of business invitees, await the end of a freezing rain, sleet or snow storm or a reasonable time thereafter before removing sleet and snow from its outside walk and steps since removal would be ineffective, generally, during the continuation of a snowstorm in progress. . . . It is a duty of a person to be watchful of their surroundings and to exercise ordinary care both to avoid dangers known and to discover dangers that are readily available—readily foreseeable. Of course, in conjunction with your considerations of the duty on people to warn, you might want to consider that if a condition is open and obvious to a person using ordinary intelligence, then there really can be no duty upon a defendant to warn the plaintiff about it. . . ."

Connecticut was one of the first states to hold that a landlord who knows or ought to know of a dangerous condition in a common passageway, caused by an accumulation of snow or ice, is bound to exercise reasonable diligence to remove the danger. *Reardon* v. *Shimelman,* 102 Conn. 383, 128 A. 705 (1925); see annot., 49 A.L.R.3d 387, 400 n.2. "An accumulation of ice or snow upon a common approach to a tenement house may impose upon the landlord a liability for injuries due to it, provided he knew, or in the exercise of a reasonable oversight ought to have known, of the existence of the dangerous condition and failed to exercise reasonable care to provide against injury by reason of it." *Reardon* v. *Shimelman,* supra, 389. The issue of a landlord's duty to remove snow or ice while a storm is in progress, however, is one of first impression in Connecticut.

The trial court's charge to the jury, that a landlord has the duty to remove snow and ice from walkways within a reasonable time after a storm, comports with the well established rule of law in other jurisdictions. "[A] landlord, in the absence of unusual circumstances, is permitted to wait until the end of a storm, and is given a reasonable time thereafter to remove ice and snow from an outdoor entrance, walk, platform, or steps." 49 Am. Jur. 2d, Landlord and Tenant § 822. See also *Reuter* v. *Iowa Trust & Savings Bank,* 244 Iowa 939, 57 N.W.2d 225 (1953); *Isaacson* v. *Husson College,* 297 A.2d 98 (Me. 1972); *Mattson* v. *St. Luke's Hospital of St. Paul,* 252 Minn. 230, 89 N.W.2d 743 (1958); *Goodman* v. *Corn Exchange National Bank & Trust Co.,* 331 Pa. 587, 200 A. 642 (1938); *Langhorne Road Apartments, Inc.* v. *Bisson,* 207 Va. 474, 150 S.E.2d 540 (1966). We hold that the court's instructions were proper.

The trial court instructed the jury that the defendant had no duty to warn the plaintiff of an open or obvi-

ous condition. It did not err in doing so. "Warning an invitee against dangers which are either known to him or are so obvious to him that he may be expected to discover them is unnecessary. 65 C.J.S. 768–70, Negligence, § 63 (53); Restatement (Second), 2 Torts § 343A and comment (e)." *Warren* v. *Stancliff,* 157 Conn. 216, 222, 251 A.2d 74 (1968) (*Alcorn, J.,* dissenting).

The plaintiff also alleges two errors in the trial court's charge to the jury on the defendant's special defense of contributory negligence. He claims (1) that it was error to charge the jury concerning assumption of risk, and (2) that it was error to charge the jury that the regulations of the plaintiff's employer could be considered in determining whether the plaintiff was contributorily negligent. We find no merit to these arguments.

The trial court instructed the jury that it might consider the doctrine of assumption of risk in determining whether the plaintiff was contributorily negligent, even though assumption of risk "does not appertain in our law anymore." The trial court then instructed the jury at length concerning the doctrine of comparative negligence.

General Statutes § 52-572h "abolish[ed] the harsh common law rule that the doctrines of contributory negligence, last clear chance and assumption of risk operated as a *complete* bar to recovery. . . . In lieu of these doctrines, subsection (a) of § 52-572h sets forth a single standard: comparative negligence. In determining the relative negligence of each party, however, the factors relevant to the assumption of risk doctrine may be considered by the trier. As long as the jury is properly instructed concerning the doctrine of comparative negligence; General Statutes § 52-572h (b); elements involving the failure of the plaintiff to comprehend a risk may be specially pleaded and weighed by the trier in determining the propriety and totality

of the plaintiff's conduct in relation to that of the defendant." (Emphasis in original, citation omitted.) *Wendland* v. *Ridgefield Construction Services, Inc.,* 190 Conn. 791, 797–98, 462 A.2d 1043 (1983).

It was not error for the trial court to charge the jury that the regulations of the plaintiff's employer could be considered in determining whether the plaintiff was contributorily negligent.[4]

The defendant introduced into evidence the accident prevention manual of the plaintiff's employer which stated that "every employee should use great care in the performance of his duties." The trial court clearly instructed the jury that this was not the standard of care that the plaintiff was required to use.

The regulations were an appropriate factor for the jury to consider in determining whether the plaintiff acted reasonably. "The standard of care remains the same—that which a reasonably prudent person would exercise under the same circumstances—but the amount or degree of care is dependent on the surrounding circumstances, and so it is ordinarily for the jury to say how much care should be used in a given situation." *Film* v. *Downing & Perkins, Inc.,* 135 Conn. 524, 526, 66 A.2d 613 (1949). See also *Smith* v. *Leuthner,* 156 Conn. 422, 424 n.2, 242 A.2d 728 (1968). The trial court's instructions, considered as a whole, presented

[4] The trial court instructed the jury as follows: "Now, you have heard reference to—and there is an exhibit that is part of the regulations of the employer of the plaintiff and there is reference in that exhibit to—I think the employer says employee shall use great care. Now, that's not the standard of care under our law but that is a standard that the plaintiff's employer has imposed upon his employees and it's a fact that you may consider in your total consideration as to whether or not the plaintiff at the time the incident happened, was acting as an ordinarily prudent man or whether he was, in fact, negligent in one or more of the ways as alleged in the special defense."

the case to the jury so that no injustice was done. *Farley v. T.R.W., Inc.,* 4 Conn. App. 191, 193–94, 493 A.2d 268 (1985).

There is no error.

In this opinion BORDEN, J., concurred.

O'CONNELL, J., concurring. I agree with the majority that a document proffered as an exhibit and denied admission must be marked for identification in order to preserve it in the record for appellate review. I disagree, however, with the concept that the offering party need not have the document in his possession in order to proffer it as an exhibit for identification. Allowing a litigant to mark a document for identification when his opponent refuses to release such document from his possession, improperly subverts the exhibit marking procedure into a disclosure and production procedure.

The manner in which the proffering party came into possession of the document in question is irrelevant.[1] The legal mechanisms for gathering evidence (e.g. subpoena duces tecum, motion for production) are independent of the exhibit marking rules.

In the present case, the document in question was in the defense counsel's file[2] when the plaintiff asked that it be marked for identification. The court's power to order production continues throughout the course of the trial and, at this point, the court, upon request of the plaintiff, could have ordered the defendant to produce the document. The plaintiff did, in fact, make such a production request; it was, however, denied by

---

[1] I recognize, of course, that this is not true of unconstitutionally seized material offered in a criminal prosecution. U.S. Const., amend. IV; Conn. Const., art. I, § 8.

[2] Defense counsel does not admit that the statement was in his file but conceded that for purposes of this argument it may be considered as "arguably in his file." This opinion is based on that concession.

the trial court. As the plaintiff has not appealed the denial of this production request, it is not before us.[3]

Our Supreme Court's ruling in *Duncan* v. *McTiernan,* 151 Conn. 469, 199 A.2d 332 (1964) is inapposite to the position of the majority. In *Duncan,* the documents had been subpoenaed and were first proffered and rejected as full exhibits. It was only after this rejection that counsel asked for the identification marking. The trial court erred in refusing the identification marking, as it deprived the profferer of a record, upon which the propriety of the trial court's exclusion of the evidence as a full exhibit could be examined. With the exception of *State* v. *Silva,* 201 Conn. 244, 513 A. 2d 1202 (1986) (discussed infra), I could find no cases in which the request for an identification marking was not associated with an attempt to preserve the refusal of a proffer as a full exhibit. In the present case, it appears that the plaintiff did not intend to offer the statement as a full exhibit, but rather, stated at oral argument before this court, that he intended its use as an aid to his cross-examination.

*State* v. *Silva,* supra, presented a fact pattern similar to the present case in that the request to mark a document as an exhibit for identification did not follow a rejection of a proffer of the document as a full exhibit. *Silva* differs, however, because the requested identification marking was of a document brought to court by a witness in response to a subpoena duces tecum. Following the quashing of the subpoena duces tecum, the trial court refused the identification marking. The principal distinction between *Silva* and the present case is that in *Silva* a subpoena duces tecum, rather than a simple request for an identification marking, was utilized as the legal device intended to cause production of the document.

[3] We also note that the only prior production denial has not been appealed.

In the present case, the majority examined the document and determined from its contents that it would not have been admissible in evidence, and that therefore the trial court's error in refusing to mark it for identification was harmless. This implies that if the document had been admissible, the court would have committed reversible error by refusing to mark it for identification. This analysis leads to the establishment of a rule which would provide that the marking of an exhibit for identification would depend upon its admissibility as a full exhibit. This would be a substantial change in the current law. See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 3.5.5 (d). Furthermore, the rules of practice expressly provide that the propriety of an order for production does not depend upon the admissibility of the material requested. Practice Book § 218.[4]

Additionally, I do not wish to lend my approbation, sub silentio, to the trial court's posttrial procedure of requesting that a party mail a document to the court, marking it for identification and including it as part of the record. This request was made after the trial had been completed, the verdict rendered, and a motion to set aside the verdict argued. See *Izzo* v. *Crowley,* 157 Conn. 561, 566, 254 A.2d 904 (1969); *LaPre* v. *Nibo Films, Ltd.,* 10 Conn. App. 669, 675–76, 525 A.2d 140 (1987).

Accordingly, I concur with the result reached by the majority but do not agree with the analysis of the claim of error relating to the marking of an exhibit for identification.

---

[4] The pertinent part of Practice Book § 218 provides: *"It shall not be ground for objection that the information sought will be inadmissible at trial* if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis added.)