[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO ARTICULATE #132
"For want of a nail a shoe was lost, for want of a shoe . . . an empire." Similarly, this court concluded that for want of a cause of action a case was lost. The plaintiff, Jeffrey Murphy, now seeks an articulation of that decision. Mr. Murphy, a farrier, sued the defendants, Richard and Barbara Eddinger, under a theory of common law negligence. The defendants' tenant, Maureen Murphy, boarded her horse, Phoenix, in a barn located on the Eddingers' property. In September of 1997, Ms. Murphy hired the plaintiff to shoe Phoenix. The farrier alleged that while shoeing the 20-year-old gelding, it kicked him, then reared up and landed on his ankle, breaking it.
Mr. Murphy claimed that the Eddingers, as the landowners, knew or should have known of Phoenix' "violent propensities" and, therefore, should be held responsible for their negligent failure to warn him of the horse's temperament. This court disagreed, concluding that the Eddingers owed no legal duty to Mr. Murphy and,. therefore, Mr. Murphy could not state a claim upon which relief could be granted. Accordingly, the court granted the defendants' motion for summary judgment. It will now more fully articulate its reasons why. CT Page 15489
 Factual and Procedural Background
The Eddingers own 14 acres of land in Middletown, Connecticut;. the property includes houses, barns and other accessory structures. They built one of the barns for their son Matthew, who uses it to house his goats and chickens. In 1996, shortly after she became the Eddingers' residential tenant, Maureen Murphy arranged to rent from Matthew stall space in the barn. She then moved her horse, Phoenix, to the property owned by the Eddingers.
In September of 1997, Ms. Murphy contacted the plaintiff to shoe Phoenix. Mr. Murphy, a professional farrier with more than 13 years of experience, admits that he fitted Phoenix for shoes at least once or twice before this incident. On September 17, 1997, Mr. Murphy went out to the Eddingers' property to shoe Phoenix. Neither Ms. Murphy, who was at work, nor any of the Eddingers was in the vicinity of the barn at the time of the incident. According to Mr. Murphy, "while . . . [he] was placing shoes on the horse, the horse kicked . . . [him], reared up and landed on . . . [his] right ankle."
The plaintiff filed this cause of action against the defendants in July of 1998. The gravamen of the complaint alleges that: "The defendants knew or should have know of this horse's violent propensities, and therefore, are liable for said attack and resulting injuries, losses and damages of the plaintiff resulting therefrom." (Plaintiff's Complaint, ¶ 5, Dated July 14, 1998.)
In essence, the plaintiff seeks to hold the Eddingers liable for the injuries caused by Phoenix — a theory of derivative liability that would hold landlords responsible for the damage caused by animals owned by their tenants; a duty not recognized by the appellate courts of this state.
On November 4, 1998, the defendants filed an answer denying any knowledge of the horse's nature or propensities. The defendants also filed a number of special defenses. The plaintiff then denied the allegations contained in the defendants' special defenses. Thereafter, on December 7, 1998, the Eddingers filed a motion for summary judgement with the requisite memorandum of law and affidavits, which contained statements disclaiming any knowledge of the horse's disposition. The plaintiff filed an CT Page 15490 objection to the defendants' motion for summary judgment with the necessary memorandum of law on March 18, 1999. The plaintiff also provided affidavits and deposition testimony with his memorandum in opposition. The court subsequently heard the matter on short calendar, and, thereafter, the defendants submitted a reply memorandum on April 26, 1999. The court granted the defendants' motion for summary judgment on April 30, 1999. In May, the plaintiff appealed this decision and requested that the court articulate its findings of fact and conclusions of law so that the Appellate Court may have a reasonable record upon which to review this court' ruling.
 Standard of Review
A "motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . The test for granting summary judgment is whether the moving party would be entitled to a directed verdict on the same facts." (Citation omitted.) Wilson v. NewHaven, 213 Conn. 277, 279-80, 567, A.2d 829 (1989).
Practice Book § 17-49 "provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgement has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . and, the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Brackets in original; citations omitted; internal quotation marks omitted.) Rivera v.Double A Transportation, Inc., 248 Conn. 21, 24 ___ A.2d ___ (1999).
 Discussion
The defendants argue that they owed no duty to the plaintiff.[1] In response, the plaintiff asserts that, as landlords, the defendants had a duty to inspect the premises and render them safe for the protection of all invitees. The plaintiff contends that a trier of fact "may well find that the CT Page 15491 premises were not reasonably safe on the day in question." (Plaintiff's Memorandum in Opposition dated March 17, 1999, p. 5)
In order to prevail under a theory of negligence, the plaintiff must establish that the defendants owed him a duty, which they then breached. "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence, cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) Jaworski v. Kiernan,241 Conn. 399, 405, 696 A.2d 332 (1997).
"The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. * * * A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the rippling of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citations omitted; internal quotation marks omitted.) Jaworskiv. Kiernan, supra, 241 Conn. 399, 405-06.
The common law dictates whether, under the circumstances, the defendants owed a legal duty to the plaintiff. At the onset, the court notes that the plaintiff, in one statement, merges the common law — combining the standard of care owed to others by an animal's keeper with the rules that govern a property owners duty to keep his premises reasonably safe. In addition, and, perhaps, understandably, given the scarcity of cases dealing with landlord-tenant-equestrian matters, the plaintiff has provided little guidance, beyond one Arizona case; Dolezal v.Carbrey, 161 Ariz. 365; 778 P.2d 1261 (1989);[2] to support his theory of the defendants' alleged liability. In turn, the CT Page 15492 defendants referred the court to the standard treatises, which, while not exactly on all fours, nevertheless, provide helpful rules. With this caveat in mind, the court will now address the propriety of allowing this plaintiff to sue these defendants under the theory of law he has advanced.
A. Premises Liability
Historically, common law rules governing property (real or chattel) rely heavily on the principle that possession (i.e., control) — not ownership — determines whether an individual may be held legally responsible for damages caused by the property. See W. Prosser W. Keeton, Torts (5th Ed. 1984), § 57, p. 386. Courts have proved reluctant to extend liability when an individual does not exercise control over the property. Id., § 63, p. 434. In addition, courts typically require that there exist knowledge or notice and an opportunity to correct the defect before holding the owner legally liable for the injuries caused by the physical condition of the property under his control. Id. § 61, p. 426. And, lastly, the plaintiffs own relationship to the property (i.e., status[3]) determines the standard or degree of care that the property owner must exercise in discharging his legal responsibilities. Id., §§ 58-61.
Under the case law of this state, a property owner has a duty to keep the premises under his control in reasonably safe condition for their anticipated use. See, e.g., Tarzia v. GreatAtlantic Pacific Tea Co., 52 Conn. App. 136, 148 ___ A.2d ___ (1999). But before the court will hold the owner responsible for the failure to maintain the premises under his control in a safe manner, the owner must have actual or constructive notice of the specific defect that allegedly caused the plaintiffs injuries.Kurti v. Becker, 54 Conn. App. 335, 339, ___ A.2d ___ (1999).
The rules governing premises liability also call to mind that none of the acts complained of in this case has anything to do with the Eddingers' land itself or any improvements thereon.
B. Liability for Injuries Caused by Animals
The rules (knowledge and control), governing real property, also generally apply to liability for injuries caused by animals. Therefore, and not surprisingly, at common law only an owner, keeper or harborer of a domestic animal owed a duty of reasonable CT Page 15493 care to others. Moreover, that obligation arises only when the individual exercising control over the animal knew or had reason to know (i.e., scienter) of the animal's "vicious propensities" and, even then, the vicious propensity had to be of the same kind that gave rise to plaintiff's claim. W. Prosser W. Keeton, Torts (5th Ed. 1984) § 76, p. 542. See also Murphy v.Buonato, 42 Conn. App. 239, 253, 679 A.2d 411 (1996) (O'Connell, J. dissenting); but cf. Falby v. Zarembski, 221 Conn. 14, 25,602 A.2d 1 (1992).
For domestic animals, other than dogs (for whom owners or keepers are held strictly liable under General Statutes § 22-357), Connecticut still adheres to the requirement that the owner or keeper know or have notice of at least one other incident of vicious conduct before he has a duty to warn or safeguard others from the injurious actions of his domestic animal. See, e.g.,Pallman v. Great Atlantic Pacific Tea Co., 117 Conn. 667, 668,167 A.2d 733 (1933). To date no appellate authority exists to support the proposition that someone other than one who has control over the animal (i.e., an owner, keeper or harborer) can be held liable for the damage caused by the animal.
C. A Landlord's Liability for Animals Kept on the Premises
The plaintiff's complaint seeks to combine the rules regarding premises liability and liability for injuries caused by animals. As noted, there exists no common law authority to hold a landlord legally responsible for the acts of domestic animals owned, kept or harbored by his tenants — even abnormally dangerous animals. Goff v. Timothy, Superior Court, judicial district of New Haven, Docket No. 241611 (March 20, 1990) (Berdon, J.) (1 C.L.R. 385).
Nevertheless, recent lower court decisions (the cases typically involve injuries from dog bites) have suggested that when a landlord has actual knowledge of the animal's dangerous tendencies and where the injury occurs in an area within the landlord's control (e.g., stairways, lobbies, etc.) then liability may attach. See, e.g., Danahy v. Johnson, Superior Court, judicial district of Hartford at Hartford, Docket No. 579914 (April 12, 1999) (Teller, J.).
The majority of Superior Court decisions, however, have adopted the logic of Goff v. Timothy, supra. That logic is persuasive in cases involving dogs and injuries resulting from CT Page 15494 dog bites, and is even more persuasive in this present situation.
The difficulty of analogizing dangerous animals with a defective condition (e.g., poorly lit hallways) or a continuous unsafe activity (e.g., the proverbial mining or blasting cases) is the degree of control and oversight a landlord must exercise over a tenant in order to remain free from liability. Under the plaintiffs theory of liability, the law would logically extend to hold the landlord responsible for his negligence in failing to warn others of the tenant's propensity for negligence.[4]
This court holds that a property owner should not be held responsible for failing to warn others about or protect them from the potential negligent conduct of a tenant absent some evidence of a landlord exercised direct control over the instrumentality that caused the injury.
First, the landowner is not an insurer of the safety of the invitee (i.e., they are not held strictly liable for any and all injuries that occur on their property). Drible v. VillageImprovement Co., 123 Conn. 20, 23, 192 A. 308 (1937); W. Prosser W. Keeton, Torts (5th Ed. 1984), § 61, p. 425. Secondly, while an owner owes a duty to keep the premises under her control in a reasonably safe condition, and this includes a duty to inspect the premises,[5] that obligation arises only after she has actual knowledge or constructive notice of the specific defect; Kurti v. Becker, supra, 54 Conn. App. 335, 344; W. Prosser W. Keeton, Torts (5th Ed. 1984), § 61, p. 419, 426. Finally, the common law will not impose liability when the danger is either known to the invitee or so open and obvious that it should be apparent. Kraus v. Newton, 14 Conn. App. 561, 568,542 A.2d 1163 (1988); W. Prosser W. Keeton, Torts (5th Ed. 1984), § 61, p. 427.
D. Negligence
"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Citations omitted; internal quotation marks omitted.) Maffucci v. Royal Park Ltd.Partnership, 243 Conn. 552, 566, 707 A.2d 15 (1998). CT Page 15495
There are particularly sound reasons for using the locus of control and the defendant's knowledge[6] to dictate when a duty is owed and whether liability attaches. These rules taken together allow recovery for injuries that occur because of an individual's negligence in failing to act in the presence of known dangers but do not impose liability when an individual does not have the ability to exercise control or has no reason to believe that such control is necessary.
 Conclusion
Absent a statutory cause of action or an affirmative legal duty at common law — and the court sees no reason to impose one in this case — the plaintiff has no viable cause of action against the Eddingers. Accordingly, based on its analysis of the relevant case law regarding premises liability and liability for injuries caused by animals, the court granted the defendants' motion for summary judgment.
By the court,
Antonio C. Robaina Judge of the Superior Court